The Fourth District Appellate Court of the State of Illinois has now convened. The Honorable John W. Turner presiding. Thank you. Good morning. Our case is People v. Morgan. That's case 4-2-2-0-5-4-4. Would counsel for the appellate please identify yourself for the record? Good morning, Your Honor. My name is Brennan McGraw from the DePaul Criminal Appeals Clinic, and I'm representing the appellant, Tyrese Morgan. And I am Maria Harrigan, who is the attorney of record in this case that supervised Mr. McGraw in the briefs and preparing for this argument. Okay, thank you for that. And for the appellee? Allison Page Brooks on behalf of the people of the State of Illinois. Excellent. Thank you. Mr. McGraw, you may proceed with your argument. Thank you. Good morning, Your Honors and counsel. My name is Brennan McGraw. As I just said, I'm from the DePaul Criminal Appeals Clinic representing Tyrese Morgan. I do not anticipate needing the full 20 minutes for my main argument this morning, but I would like to reserve five minutes for rebuttal. Thank you. We are here today because the state failed to prove beyond a reasonable doubt that Tyrese was a police officer causing injury. This is true for two reasons. Argument A is that the police were not performing an authorized act when they attempted to seize Tyrese. Argument B is that de minimis injuries sustained by the police should not form the basis for a felony conviction. I'm happy to answer any questions you might have about Argument B, but I think the focus of this oral argument should be on Argument A. Counsel, good morning. Good morning, Mr. McGraw. With respect to Argument A and the issue of an authorized act, we know that in People v. Larkin, which is a 1974 Illinois Supreme Court case, the Supreme Court held that the making of an unlawful arrest is an authorized act for purposes of the resisting statute. So tell me, why does this rule not apply to the officer's attempt to handcuff the defendant on the porch of the residence? Thank you for the question. So I think the main distinction between Larkin and the present case is that in Larkin, they were dealing with an unauthorized arrest, whereas here, the police weren't outright arresting Tyrese. It was merely a detainment or a terrorist stop, like a tier two encounter, and I believe it's in a People v. Shipp, a 2015 case from the 2nd District, which I cite in my reply brief. That court discusses the distinction between that rule where resistance of an unauthorized detainment is not unlawful in the same way that resistance of an unlawful arrest would be. Well, but isn't handcuffing more consistent with an attempt to arrest somebody than an attempt to detain someone under a terrorist stop? Sorry, one second. I think the difference here is that, well, for one, the defendant, Tyrese, obviously did not feel himself, did not feel that he was seized. He felt that he was free to leave in that moment, as he demonstrated by leaving the scene momentarily after. In addition, I'm not sure if the police actually managed to handcuff him. I believe they just were trying to put his hands behind his back. I know he makes a comment about handcuffs, but I don't believe there's anything in the record indicating that he was handcuffed at that time. Well, but my question had to do with an attempt to handcuff. I mean, why do you characterize the attempt to handcuff the defendant on the porch as a terrorist stop rather than an arrest? As for one, it has to deal with the justification for the stop. I'm arguing that there is no justification for detainment, let alone that there be any justification for an arrest. I think also the court should consider the nature of the police presence at the scene that day where they're responding to a noise complaint, noise violation. This is less of a criminal law enforcement, what's our function of law enforcement that they're performing at the time. It was more of a community caretaking encounter where they're simply mediating a noise dispute. Well, a community caretaking, I mean, this was an ordinance violation, was it not? How is that community caretaking? Let's see. I know I cited in my opening brief at one point, but I believe it's footnote one in there. There's a case where they talk about community caretaking, referring to capacities that the police perform, including mediating noise disputes. That's People v. Slaymaker, 2015, the 2nd District. Additionally, since this is merely a municipal ordinance violation, which is punishable only by fine and not incarceration, the Illinois Criminal Code of 1961 and the Code of Criminal Procedure of 1963 would not classify this as an offense. So in that respect, it's a noise complaint, it's obviously a municipal violation, but it's not a criminal offense under Illinois law. But now the state really presented no evidence at all that the defendant was participating in making loud noises and violating any ordinances, did they? I do not believe so. No, he was just simply present at the party that the call was referring to. Yes. While we're on the facts, I guess I'll- Counsel, before you leave that topic, Justice Zeno pointed out that if the officers were attempting an arrest and a person resists the arrest, even if it's an unlawful arrest, that would constitute resisting. Do you have any argument that that is not, in fact, a correct statement of law? I believe that is a correct statement of law based off of lock-in and some of the other case law I read preparing for this. And just to follow up with one more point, not only were these officers attempting to place handcuffs on a defendant, they were also doing some maneuvers to sweep him off his feet. Am I correct? Is that in the facts? That's correct. I would suggest that, as Justice Zeno has already indicated, that seems to be like an attempt to arrest as compared to simply detaining. But if you have nothing more on that, please move on from your argument. Okay, thank you. I'll sit back. I have two questions. Assuming we accept your argument or position that this was a Terry step on the front porch, if we look at this, really, weren't there two instances of detainment? One on the front porch and a second one when the defendant was handcuffed after the foot chase? Correct. I think you can look at it that way. However, one thing to consider is that—let me see if I have the exact quote here somewhere—a Terry stop or detainment needs to be justified at its inception. So I don't believe the police can basically single one person out and start chasing them and then, only after they've done something incriminating, then try to create the justification after the fact. Additionally, even if we accept that Tigress was detained at the time that he was tackled on the fence at the very end of the chase, that's already after all the injuries to the officers had occurred. So at the very least, the injury enhancements with subsection A7 would have to be removed and his conviction would have to be reduced from a felony to a misdemeanor. If we analyze this a little differently, though, and we assume the attempt to handcuff him on the porch was an unlawful Terry stop, then didn't the defendant's flight—you had indicated he had the right to flee at that point—end the seizure? That's a good question. To some extent, yes, but I think the issue here is that the police continue the pursuit. They continue yelling at him to stop, even though they have no basis to do so. I don't believe that the officers in that moment believe that they were two discrete encounters here. I think from their perspective and from the defense perspective, this was one continuous encounter that we don't have an exact record of how long it lasted, but I'm sure it's no longer than a minute or a few seconds. Well, we can't speculate, but isn't this case really like People v. Henderson, another Illinois Supreme Court case, where our Supreme Court told us that the defendant's flight from an unlawful Terry stop ends the seizure, so that anything that happens after that is really no longer related to the initial stop? Again, going back to how we analyze this case and the two different analyses regarding the Fourth Amendment. Well, I think in either case, if there is this second discrete encounter, which we analyzed separately, the police still did not have a basis for the stop. It's still an unauthorized Terry stop, and therefore there cannot be this conviction for resisting those actions. Well, on the porch. Well, let's say not on the porch, but let's look at the facts with regard to the second one. Okay. The police knew that there was a gun found initially under a car. He wasn't connected with that. But then when he ran, Officer Watson saw him reach for his waistband, and when they were going over the fence, saw him fling his arm, and I believe heard something drop, and later a gun was found. Yeah, I'd say that is an accurate presentation of Officer Watson's testimony. However, I think it's worth mentioning that this testimony was not deemed credible enough by the trial judge to convict him, convict Tyrese of any gun charges connected to that gun. No, but resisting. I'm sorry. Go ahead, Justice Harris. I'm sorry. I'm sorry, Justice Zinoff. I would just say that the burden there, the quantum of proof is substantially different in terms of supporting a conviction versus a finding of reasonable suspicion. Would you agree? I agree those are two different standards, Director Hunter. Thank you. And so following up on that, wasn't that fresh, reasonable suspicion justifying handcuffing the defendant when he fell to the ground, when he fell over the fence, and knocked the fence down? Was that reasonable suspicion? Thank you, Your Honor. I do not believe it would be. I think... Sorry. I think one thing to consider is, once again, this comparison of the people versus ship. In that case, it's very similar where there's this initial encounter, they put their hands on the defendant, the defendant takes off running. However, that court also considered it the same encounter the entire time, and they didn't use that flight as after-the-fact justification for the detainment. So I would push back on considering these to be two separate encounters, if possible, under ship, analogizing to that case. If you'd like, I can discuss ship a little bit more, let's see. So, in ship, in that case, the police officers approached and detained the defendant without justification. And in response, the defendant fled with the officers in pursuit, yelling at him to stop. The defendant slipped on some ice, allowing the officers to catch up and arrest him. And he was convicted of resisting a peace officer. And in ship, the second district found that a Terry stop occurred during the initial encounter between the defendant and the police. However, since there were no facts tying the defendant to any reports of criminal activity, the court deemed the stop improper and stated that a refusal to cooperate without more does not furnish the minimal level of objective justification needed for a detention or seizure. Additionally, the ship court held that the defendant's flight from the scene did not support his conviction for resisting a peace officer. The court distinguished between the resisting unlawful arrest versus resisting an unlawful detainment rule that we discussed earlier. And once again, while it is legal, illegal to resist an arrest, it is not illegal to resist an unlawful Terry stop because people have a right to go about their business and their choice to terminate the police encounter does not authorize a subsequent stop. I think that ship is the controlling case here. The facts are nearly identical. I'm sorry, yes, I agree. And then consequently, let's assume we can determine then that the defendant's flight was from an unlawful Terry stop at that point and did not give, at that point, the officer's probable cause to arrest him for resisting. But then he ran. I mean, he continued and they pursued him. And it's then that they saw, and I went over this before or posted as part of my questions facts that officer Watson saw him reach for his waistband and throw the gun. So I just I'm not sure how we get past Henderson and keys, which is a case that says we said flight after seizure occurs after a seizure occurs, ends the seizure. So I'm having difficulty seeing how we have one incident as opposed to two. Well, I think one thing to consider is that this wasn't just flight from the initial encounter, it was provoked flight. The officers were, you know, again, physical of my clients. And he then he exercised his right to go about his business. And by continuing that pursuits, I think there's sort of a fruit of the poisonous tree doctrine here, where by continuing to pursue him, to continue to provoke behavior by him, it's the same chain of events that eventually lead to the what I believe you deem the incriminating behavior, the what officer Watson saw throwing the gun. So I think undershift, like continuing that analysis, analysis, undershift, the initial encounter can't create further encounters that then authorize a subsequent stop when at the end of the day, it's all causally linked. Well, in keys, we relied on California versus Hodari D. And that's where the Supreme Court of the United States said a seizure is a single act, not a continuous fact. How do you respond to that counsel? Well, I think one interesting thing to consider from Hodari is that the court also analyzed in there that as long as the defendant still feels free to leave the area, then that is strong evidence of the stop not being effectuated at the time. So if he's continuing the pursuits, then I don't think we can say that that's the was a seizure at the exact moment that the officer sees him fling his arm to the side. If anything, you have to wait until the stop is actually effectuated when he's on the fence later, when he's tackled on the fence later after the injuries to the officers have already occurred. I'm not sure exactly how much time I have left. I'm happy to take any more questions though. Let's see. I know I had a lot of questions, counsel. Thank you for all your responses. No, it's not easy. I appreciate it. Absolutely. And I think we covered most of what I was hoping to discuss here. So if you'd like, I can conclude now. So in conclusion, the police lack the reasonable suspicion necessary to detain Tyrese and thus they were not performing authorized acts within their official capacities. And for the reasons stated here and in the briefs, oh, I'm sorry. Did someone say sign or is that just a excuse me? Sorry, I'll continue. So for the reasons stated here and in the briefs, Tyrese Morgan respectfully requests that this court reverses convictions or in the alternative reduces convictions to class A misdemeanors. Unless your honors have any more questions, I have nothing further at this time. Okay, I see no further questions, Mr. McGraw. You will have rebuttal, however, if you choose to use it. Ms. Brooks, you may proceed with your argument. Thank you, your honors. May it please the court and counsel. I understand the defense opposition is that because this is a municipal ordinance violation punishable only by a fine. That means it's not a criminal offense for purposes of the Terry rules. But I have the cases he has cited is not explicitly ruled that they say that the municipal ordinance violation is not an offense under state criminal law. But this is not an actual Terry case. They don't cite like a case involving, say, a minor and a curfew ordinance or something like that to show that there's no authorized Terry stops in those situations. So they haven't actually established that in the brief. I wish I had briefed that further in my brief, and I'm sorry to the court that I didn't provide more guidance and helped on that issue. But at least that's not really necessary to resolve in this situation. Because the question is whether the stop is justified. It's an inception. And under the Thomas case, the inception is when the is when the actually when it's the stop itself is not here. It's not effectuated until the defendant is actually broken through the fence and is being arrested. So for that reason, the case where he argues that the officer's injuries had occurred, I think what happens is the fence nail that injured one of the officers, I believe, would have been happened as a defendant crashed the fence. So if the justification, for example, the seeing the defendant, the inferences that the defendant was holding a waistband and flung his arm and heard a sound on the other side of the fence would have been that he had deposited a contraband weapon, that that would provide reasonable justification, a reasonable suspicion of that as being some sort of criminal offense that would permit the authorized act and that the injury happens only after that. So when he crashes in the fence and an officer gets injured on the fence nail, that that would be something that happens afterwards and not before. Good morning. How did the police gain reasonable suspicion to stop the defendant the second time? The detention that happens when he crashes into the fence, your honor, is that question? Yes, yes. Based on seeing him flinging a weapon away from himself, that that would be an inference, at least reasonable suspicion that that gun was contraband or why would he be throwing it away? Right. But that counsel argues that for the initial stop, if that was a stop, there was no justification. So he had the right to flee. Do you agree with that? Well, in the sense that. Right. Cannot be considered then reasonable suspicion of the act of resisting arrest. But he does something else. In addition, that is, he throws the gun away and that would be a reasonable suspicion of something else other than just his arrest. So his the illegal stop is more than that. Not just his flight. It's alone. It's the fact that while fleeing, he's also throwing like contraband. And that's why the officers have more than just his flight from what he considers to be an illegal Terry stop. Right now, at trial, the state really offered no evidence or even any argument pertaining to the element of an authorized act at it. The elements of authorized acts. Right. It was required for the resisting. Charge in the bill of indictment. The child court ruled his acts. And so based on the evidence that included that, the fact that the defendant was during my contraband, at least as the inference. That he was seen during my contraband during his flight. So that's why the trial court could properly rule that he that the police. That the police were executing an authorized act. So that was the evidence. I agree that the trial court made a ruling, but I guess my question had to do with what the state's evidence was. And argument. I don't remember exactly what the state's argument was, but the, the, the, the evidence did include the defendant throwing an object over the fence after having held his waist bands based on that. What it looked like and sounded like that there's at least a reasonable inference of reasonable suspicion that that was a contraband firearm. And therefore, that would support the reasonable suspicion for the stop at its inception. That is when the defendant falls into the fence. And that also is approximate cause of the injury to the one officer, at least who was injured on the fence with, like, was punctured by a nail, I believe. I have a question. When the officers originally were trying to handcuff defendant and trying to sweep him off his feet, is it the state's position that they were in essence trying to effectuate a Terry stop versus an arrest? Or does the state have a position on whether there's a distinction there? The state does not have a position on that issue. I don't believe it's like clear enough to exactly what the police were attempting to do at that moment. So it's not really necessary to resolve that issue because that was never an effectuated. The defendant was never effectively detained at that moment. So it doesn't really matter what the nature of that incident is because the defendant, anything that happens up until the moment the seizure is actually effectuated can be considered when determining whether there's a legal basis for the detention. And that included the time when the defendant was throwing away contraband willfully. Well, let me ask you this. I noticed in accounts four, five, and six of the indictment, the state uses the term detainment versus arrest. Does that make any difference? Well, if they're charging the subsection a two, which is the obstructing performance of an authorized act versus resisting arrest, then there would be a difference in the sense that if he was resisting arrest and the rest could be unlawful and it would still be a resisting arrest. But because subsection a two requires it to be an authorized act, if it is detainment rather than say arrest, cause he's not resisting arrest unless there's evidence of an arrest. And that's why it's not necessary to show evidence of an actual arrest because he wasn't, if he wasn't charged with that, he was charged with resisting an authorized act. So it could be detainment rather than arrest. But then they also have to show them that the act was authorized. Okay. I think that answers my question, but here I'm kind of hung up on this. The three counts on resisting use the term detainment and then, um, which seems to me to suggest a terrorist stop versus an arrest. Then we run into the, um, fourth district appellate court case. People be either that says a defendant who runs away from an unlawful Terry stop is not resisting or obstructing an authorized act of the police officer. So we've got detainment in the bill of indictment, which suggests a Terry stop. Then we got the, uh, quote I just read to you from people be either, which is a fourth district case from 2019. That seems to suggest to me that, um, defendant can't be convicted of resisting arrest under the facts here. What's your response? Well, if the defendant, if there was no reasonable suspicion that arises by the time the legal basis for the detention is determined, that is when it was finally effectuated at the fence. Then if he didn't have the, uh, wasn't observed the sight and sounds of him throwing away a contraband firearm. That's the inferences. The officers were entitled to draw from that conduct that they observed and heard. Therefore, if there wasn't that, then yes, that either case would control, but because they have this additional basis that, uh, well, that is unless there's, if, if the ordinance issue is, is resolved in the defense favor as well as what it meant. Um, then that, then if, if it's just assuming for the purpose of your question, if the Terry Stock was illegal, then either would control if you don't have the additional fact of this throwing away of the contraband, which creates additional reasonable suspicion of a criminal offense by the time the defendant is actually detained. And that's the moment in time in which it's a legal basis is determined based on what was known to the police at that time. Well, then how do you about Henderson, which I mentioned to Mr. McGraw and that is that a defendant's unlawful Terry stuff, which we had at the beginning, presumably ended the seizure. So anything that was no longer causally related to that initial stop. So we don't have one continuous chain of events, so to speak, but two different detainments to analyze and look at. The first presumably being unlawful. The second not. Well, the state does not concede that whether it is unlawful, the first attempt to detain because the state did argue that the ordinance violation would be an authorized act. But just even assuming that if that action was unlawful, there was still like never an he was effectively detained. Initially, before he somehow fled, but he was never actually detained because he was able to flee them. So that's why I guess the initial attempt to detain wasn't actually a detention that had to have a legal basis. Analyze when they detained him long enough to attempt to handcuff him and to sweep him off his feet. So I guess I'm not sure what they weren't successful in bringing him to the ground. He fled, but they certainly have been long enough to try to let me put their hands on him. They tried to handcuff him. They again tried to sweep him off his feet. So I don't know how that's not a detention or detainment. Well, the state's position is that he was not actually detained at that moment because he didn't submit to the detention and therefore he was able to flee from it. So therefore, it was only an attempt to detention and the actual detention occurred at the fences. That's the moment when the court would analyze whether the police had reasonable suspicion based on all the facts known to the police at that moment in time. So the initial. Okay, I understand your answer. When you are that these no noise violations justified detaining the defendant while he was on the porch. How is that not speculation? There was really no evidence at all with respect to those violations or that the defendant was participating in that was there. But the defendant was at the property where the noise was emanating from in the very early morning. So the police would at least have reasonable suspicion to investigate everyone at the property for a violation of the noise ordinance. So the defendant wasn't like somewhere else across the street. For example, if he was on that property where the noise was coming from, they don't actually have to see him making the noise. And you're saying that's pursuant to a caretaking function of the police? No, it's pursuant to the police's authority to investigate municipal ordinance violations. It's not community caretaking. They're investigating a violation of municipal ordinance. And they can detain people for that? The state's position is that they would be authorized to detain for a municipal ordinance violation. I have not seen the specific. Those are civil violations, not crimes, correct? Detention, Terry stops have to do with crimes or the suspicion that a crime has been committed or is being committed. Isn't that correct? It has to have an offense. But if a municipal ordinance makes it an offense, then the state's position would be that that could be also something that would be within the scope of Terry for constitutional purposes, even if it's not incorporated within the state's codification of the Terry ruling. We did not read the actual, like, any cases that specifically held in the context of a municipal ordinance violation, whether or not Terry applies. For example, a case like a juvenile who is suspected of violating curfew ordinance, whether that would subject that minor to a Terry stop, whether there's a case like that, that would actually decide one way or the other on specifically whether that constitutes a Terry stop that's that's authorized and lawful under the constitution. Brooks, I'm not sure I understood your argument earlier on the significance of the defendant apparently throwing a contraband off of this person off to the side. What's the state's position on why that is significant? Because the defendant, it's at least within the. The the inferences that could be drawn from a police officer who sees somebody holding a gun in their waistbands or the inferences that is a gun in their waistband that they're holding their waistbands, and then they hear a heavy object being deposited during a police flight, that that would be something that that must be contraband for. Why would defendant throw away a valuable item unless it was illegal for them to possess it? At least the inferences that it would have been unlawful for them to possess it, or why would they throw a valuable item away over in the weeds somewhere? OK, so you're not you're not saying then that the discarding of the contraband was an act of resistance. That's not the resisting that you're referring to in the indictment. No, the resistance is when the defendant continued to resist after he fell over the fence when he tried to jump it. So he struggled to prevent himself from being handcuffed and pulled his hands underneath his body. Those are the acts of resistance at that moment. OK, my problem with that is the injuries had already occurred. And by the way, I referred to counts four, five, and six of the Bill of Indictments X and counts three, four, and five. But those injuries, as alleged in the indictment, had already occurred at the time of the resistance after defense had been broken down and then they caught defendant and attempted to handcuff him, right? Am I correct? If the act is him pulling his hands under his body after he falls in defense, then if that is the only act, then I guess the defense position then is that that's not of something that already happened. So that would be a potentially good argument. So if the officer falls over the fence and injures on a nail, yeah, I don't remember. Let me think if that's the only act that they alleged. Is he still fleeing from the police while after he discards the gun? So that's still an act of I'm not sure that the Australian prevent being handcuffed once he fell over the fence is the only act alleged. But the resistance you're the state's referring to, who is once the fence is broken down, he's on the ground. They're trying to handcuff him. And he's fighting that. That is the resistance the states are lying for, as I understood your answer from just a few moments ago. Am I correct? That is one of the acts that he committed. I'm not sure if that's the only act committed, though, because he was still fleeing from them. If they ordered him to stop, then he would have been obstructing them as he was fleeing. So yes, then you've got the problem that all relates back to the initial Terry stop, which if there was no reason suspicion for he was justified in running or I don't know if it was justified, but it wasn't enough to establish the crime resisting. Isn't that a problem for the state? It seems to me it is. Because the state's position is that the stop was actually effectuated after the moment he falls into the fence and that by that time, reasonable suspicion had ripened through the fact that they have inferred that he threw away a contraband firearm. Okay, I have one other question. I don't want to completely take all your time up, but on the had argued that under the state's theory, if someone runs and is chased, if an officer receives any injury, any little neck spray cut that would make it a felony. Is that what the statute encompasses when it speaks of injury that occurs during the resisting? Yeah, it's clear that it says an injury. It doesn't say any injury, but it says an injury and it's not qualified to exclude de minimis injuries. So that would mean that this court would have to be reading in an exception that's unstated, which is something that's not permissible in statutory interpretation. And if an officer is injured while pursuing a fleeing defendant, particularly like here, when the officer falls into a fence and gets punctured by an ale, I mean, that seems to be something that's encompassed by the intent of the legislature in making this a felony enhancement. But would it be reasonably perceivable for an officer chasing someone, a suspect, to pull a hamstring or to sprain his or her ankle? Is any injury that occurs when an officer running qualifies it to make it a felony? Is that what the statute means under the state's, I guess, interpretation? Yes, Your Honor, because if the getting like twisting a knee or spraining an ankle would be reasonably foreseeable, therefore that qualifies as an approximate cause test. And the exact mechanism of injury doesn't have to be foreseen. But so that's why the probable cause test is still pretty broad and would encompass things like sprained ankles. Okay. I monopolized too much of your time. I apologize to Justices Harris and Zienoff. The time is up, but if you two have questions, I invite you to still make them and we'll give the state a little extra time to respond. If not, then we'll move on to rebuttal. I don't have any others. No, thank you. Okay. Well, thank you, Ms. Brooks. Is there any rebuttal? Mr. McGraw. Yes, Your Honor. Please proceed. So I think I would like to focus for a second on the fact that when Tyrese initially flees, when he leaves the front porch and he is exercising a constitutional right to go about his business, the state has offered no reason for the police to continue that pursuit. The police continue this chase after provoking him to flee and they continue to provoke him as they're chasing him, which eventually leads to this flinging of the hand that one of the officers in pursuit saw, but the other officer that actually the officer that was closer to Tyrese at the time did not even see this movement. So I'd like to ask, as a matter of public policy, why should we be allowing the police to essentially harass people who are exercising their constitutional rights and then essentially manufacture a justification for a stop later? I guess that's a rhetorical question, but in my mind, I don't see any reason why we should be allowing this to stand as the law, since it seems to undermine some of the principles that the Fourth Amendment would be protecting. So in this case, the facts are and include the fact that there was a gun. One, this is a high crime area that was part of. Two, there was a noise violation, a loud party, to which the police were called and a gun was found under a car or near a car. So we have a few more facts than you just mentioned, or that you didn't allude to any of them, that certainly may have indicated to the police that they did need to pursue somebody who fled from the scene. We don't have any information that the state put on in its case as to the reason that they were trying to actually detain the defendant. There may have been, but the state didn't put it on. We do know these facts. So I think that should be something at least that is considered when we hear the argument and comments you just made. Thank you, Your Honor. You are correct. That is exactly what happened. I didn't want to brush over that entirely. However, I just want to reemphasize that none of those, it's like the noise complaint, the gun under the car, none of those are directly tied to Tyrese in the facts. I don't want to speculate on what the police were thinking, but from what we have in the record, it doesn't appear that they had any real justification to continue this encounter with them at the time. As for what the state alluded to, the resistance after the defense falling, I think we have to consider that Tyrese putting his hands under his body is almost entirely a passive action. He's not running away. He's staying right there. He just happened to land on his hands, I'm assuming. Sorry, I shouldn't speculate, though. We should also, though, compare it to People v. Slaymaker, where, in that case, the defendant even made an attempt to grab the taser of the officer who was trying to detain him. The court there never found that that action speculated to unlawful resistance. In fact, they ended up overturning his conviction for resisting, despite him trying to grab an officer's weapon. I think comparing that action to just merely keeping your hands under your body is very talented. I believe that's all I had for rebuttal, but I'm happy to answer any further questions. I don't see any questions. Mr. McGraw, I want to thank you for participating today. I did have one comment that I'll speak only for myself. It's my position that courts of review do not, or at least should not, make public policy. We leave that up to the legislative branch, and we just try to interpret the law. But again, I appreciate all of your arguments. Ms. Brooks, I appreciate your arguments as well. The case is now submitted, and the court stands in recess.